Our third and final argument for the day is Chavez-Valvarez v. Atty General. Mr. Shagan. Thank you. May it please the Court, Craig Shagan for Petitioner, Jose Chavez-Valvarez. If, with the Court's permission, I'd like to reserve five minutes for rebuttal. And I would also like to concentrate my oral arguments on the two arguments we raised in our reply brief. If the Court, of course, has questions on the other arguments, I should be happy to address them. The facts of this case are pretty straightforward. In 2000, our client pled guilty to five specifications, four charges of military offenses in South Korea, for which he was sentenced to an aggregate of 18 months. The sentence by General Court-Marshall, the practice is not to allocate a sentence between the various offenses, but to give an aggregate sentence. Twelve years later, our client is put into removal proceedings for one of those offenses. Twelve years, yeah, I should have said that. The Court, this panel is well acquainted with the facts and the procedural background. I'd like to cut to the quick and ask you, I mean, isn't this case, from your standpoint, really about the burden of proof? And how, in your view, the government has failed to meet the clear and convincing evidence burden? Quite clearly, that is correct with respect to the sentence, because it's their burden to prove that he had a sentence for one year or more, and he did not. And I thought that was axiomatic. I don't see the argument, quite frankly, on the other side as to how it could not be. You're not impressed with footnote 10 in the government's brief and the table? No, Your Honor. And may I point out that this was an issue raised very early on, and three years later, it's now being addressed, and it seems such a fundamental principle of law. And I don't know what more I could have done as an advocate to have made the position clearer. Well, let's set that one aside for just a minute, and let me ask you something that isn't really covered in your briefing, but has had me wondering. The immigration judge found your client removable not only on the basis of this Article 125 violation, but also on the basis of your client having committed two crimes involving moral turpitude not stemming from the same criminal scheme. The BIA chose not to address that because they focused on the Article 125. At the end of the day, even if we agree with you that the BIA just blew it when they said 125 is what it is, that it covers the behavior here, I'm curious about your, well, what position that leaves the court in. Should we be remanding this case for consideration of the second ground that the immigration judge addressed and that the BIA chose not to? Yes, well, that again adds to the burden, the very real burden of our client, because it drags out this litigation so endlessly. We would have preferred the BIA, obviously, to have addressed it. However, I think, in fairness to this court, the remedy would have to be a remand. Well, the determination has to be made, does it not, as to whether or not these two crimes involving moral turpitude arose out of the same criminal scheme. That's one of the issues. There's another issue, which I think is even more powerful, which I would like to call the court's attention to, which is the second issue that we have in our reply brief. The Supreme Court, in its last three decisions on the categorical approach, in Moncrieff, in Leocal, and in Charcondeau, I cannot pronounce it too well, says you look at the statute of conviction and you interpret that statute in a light most favorable, the criminal statute, to the non-citizen, to make your determination. If you do that in this case, there is no question. It is now constitutionally protected behavior. At the time that he was convicted, they were convicting people of consensual sodomy. What the government is trying to do is reconstruct the criminal statute based on punishment. Only Congress has the power to write a criminal statute. Well, I understand you want to go to that issue, and that's fine, but I think I heard you say, and I want to verify this, Mr. Shagan, that you concede that we're not in a position just to say, and let him go, because there's this other ground for removability that the BIA didn't address, but which is on the books because of what the IJ said, and it's got to be dealt with. Sadly, yes. And meanwhile, he's sitting in your prison. Yes, and there's a separate case. Right, and I don't want to get into that, but you can see the incentive to give up an appeal. You can see the pressure that this puts on people because you don't get a full addressing of the issues even when you're there. And this is not even the first issue. The issue on the sentence is such an obvious point of law. Well, when you say it's so obvious, as to the sentence and the year-long, we'll be talking about that with your opposing counsel, but they have an arguable point, do they not, that whether this is forcible or not, whether you can take that manuals- Manual for court-martial, yes. And pull it in because it's got to be proved beyond a reasonable doubt. That's a credible argument to be making a pitch on, isn't it? Absolutely, and I have a credible response, and I think mine is the more persuasive. And to me, the distinction between the government and our position is the difference between whether you want to go with the categorical approach or whether you want to go with what the guy was found guilty of, found guilty of in the sense of factually. And then I have a more significant problem, particularly as the government argued in their brief with Aguilar. I can see my problem there, but that's not what the Supreme Court has been saying. And what we're essentially trying to do here is meld a system of criminal justice that is not typical. It's not the civilian criminal justice system. It's the military justice system. It has its oddities, and the question is, do you pound the round peg to go into the square pole, or do you just say, well, in this case, it doesn't fit. And if it doesn't fit, let him go. And then we wouldn't be here at the Third Circuit after three years of arguing this. You would just go down. You'd look at the notice to appear. You'd look at the statute. You'd say, well, that statute does not have an element of violence in it. And you're recreating the element of violence. You're not reading the statute in a light most favorable. Aren't you in an interesting position here? Because your argument has to be and is, wait a second, Article 125, as it was written at the time, it's been amended since, but as it stood at the time, covered consensual sodomy, not just enforceable or rape sodomy. And then at the same time, you have to say, and you alluded to it here, that even though that was the source of conviction before, if it goes back and it's looked at as a crime involved in moral turpitude, don't look at the law extant at the time of the conviction. Look at it now through the prism of changed societal values, that this is something that's constitutionally protected behavior now. Oh, that's an interesting point. Can you get it both ways? No, that's a very interesting point. Yes, I think I can. And there's actually case law that I think, I know there was a case out of San Francisco where somebody was determined to be inadmissible because they were a homosexual. They were found to be a homosexual, and the judge made the determination that with current mores and standards, I no longer think that is a CIMT, or that a conviction for homosexual sodomy is a CIMT. But your point- I'm not trying to get into the social mores of the day. I'm trying to ask as a purely legal point, if it was a crime involving moral turpitude at the time of the conviction, how could we be in the business of saying, yeah, but we don't think it is now? How would it be what it was when it was? Well, I guess what I'm saying is I would take it either way. I think quite clearly today it is not, and if I was to go back and have to argue, was it in 2000, I think an excellent case could be made that that was a regulatory offense in the nuanced environment of the military where sexual offenses, even of a consensual nature, are against the good order of the court. Well, it wasn't just a general article offense. No, that's true. It was a specific offense against Article 125, as you very capably pointed out in your briefing as you made it clear that, hey, under that pre-amendment version of Article 125, consensual sodomy was a criminal offense under the military code. Well, I think that's a very interesting point, and I would take it either way. I would say that you can look at, when you decide whether something is inherently base or vile, if today it is not, like witchcraft, okay? Witchcraft at one time, very base, very vile. We no longer believe in it. If you are convicted of witchcraft and you're now coming to, we say, yes, you were convicted of witchcraft in 2000, we'll go back and tell us if that's a CIMT. I think you have to tell us if it's a CIMT based on today's mores and science and knowledge and information. I don't think you can say that's inherently base or vile, given what we know about the elements of witchcraft. I don't know much about the elements of witchcraft, but I'm going to cut you off right here because you have reserved significant time on rebuttal, Mr. Shagan. But first ask Judge Van Antwerpen if he has any questions. All right. Thank you. We'll have you back on rebuttal. Ms. DeAngelis. Good morning. Kate DeAngelis for the Attorney General. At the outset, I want to concede that this is a very difficult case, and it's because of what Petitioner highlighted. We have criminal law that doesn't fit, but what we do have is a very serious problem here. We have an alien who has committed a forcible sexual offense. It's so serious that it took 10 years to pick him up after his release. I understand the frustration there. I don't have a reason to give you about that. The fact that he was living under the radar for 10 years, that he was possibly irremovable. Under the radar. What in the record is there? I mean, this takes us on a tangent, but there's absolutely nothing in the record to indicate that this man was trying to live off the grid. So I don't think it behooves the government to try to say he's the figure who was hiding from us. This is the government getting around to it when it gets around to it, but let's set that aside. And if you would please address what the Petitioner has made the centerpiece of the reply brief, and that is they've got no case on more than a year since. They're just making stuff up. And I've got to say, when your own brief couches it in terms of assumptions, which it does. That's footnote 10. Yeah. I think it says, assuming all these things, haven't you by definition taken yourself out of the realm of clear, unequivocal, and convincing? By definition. I think that it's arguable. I have to admit that. But I have to say that the problem here is that there is no time that a military conviction will be able to be considered an aggravated felony. That's not so. There are remedies out there, right? For immigration purposes, no. If it's always an aggregate sentence, unless the alien is… There could not be legislative action of any kind? There could not be action by the President with regard to the manual? Yes. This is not the kind of interorum situation that you have argued both in your brief and right now. There are ways of addressing this problem. There are non-judicial ways, yes. I would agree with that. Well, not everything is a judicial problem, right? How the military chooses to sentence people and characterize sentences may have immigration consequences, but that doesn't mean it falls on Mr. Chavez-Alvarez. If the government doesn't like the way that's happening, you've got a route to deal with it. Yes, I would agree with that. I do. I'm in a position of defending a published board decision. We feel that it's fairly obvious that one crime out of the four that he was convicted of is far more serious than the others. One bore a life sentence. The others were very smaller sentences, one year, five years. This is the only way within the confines of the military sentencing arrangement that we can find that aliens who are convicted of two offenses, one of which is a very serious aggravated felony, can be held accountable in an immigration context. I appreciate and don't want you to think otherwise, Ms. DeAngelis, of some of the candor you've demonstrated in the last few minutes, your reference to being in a position of defending a published opinion of the BIA. And on that point, I'm wondering just how persuasive you think the reasoning of the BIA was in invoking the matter of S, which reaches all the way back to 1947 or 1948. And I don't think that citations to it have exactly littered the jurisprudence with a great deal of frequency over the years. And I have to agree with you, and we did concede in our brief, that that was not an appropriate citation, which is why we constructed the alternative method of apportioning the sentence. We acknowledge, as Petitioner did in his brief, that the military does not use concurrent sentencing. So on that point, I would have to agree with you. All right. So let's, if we can, turn for just a second to what if, assume for the sake of discussion that we thought that the government hadn't borne its burden of proof here. As to the only ground on which the BIA chose to render its decision, what's the right step? Does it go back on remand? For the CIMT determination, you mean? Yes. Well, if the court holds that the aggravated felony determination is correct, there's no reason to remand for the CIMT finding. I just said assume we disagreed with you. Oh, I'm sorry. I thought you said assume that you agreed. No, no, no. I'm sorry. You're a little too hopeful there. Assume we didn't agree with you. I do believe that the case would need to be remanded to the board. It's within their purview to determine whether something is a CIMT or not. Okay. Now, as to whether or not shifting, and I'm sorry to whipsaw you, but shifting back off of the year-long issue and on to the question of whether the, quote, elements, unquote, which are in the manual are part of the statute, we said something that Jean-Louis said I'd be curious to have your response to. We said, although we defer to the agency's determination of whether an offense constitutes a CIMT, we accord no deference to its construction of a state criminal statute as to which it has no particular expertise, unquote. Would you agree that that same principle holds true when looking at military offenses, that is, offenses under the Code of Military Justice, just as it does when looking at state criminal statutes? Whether the board, yeah. But the board has no particular expertise. That's right. I would agree with that, yes. Okay. So that if we look at the criminal, at the decisions of the Court of Military Justice and other similarly named courts because they come by a variety of names, and we see decisions from those courts that say the manual provides aggravators but does not provide statutory elements, we'd be bound to give credence to that over the board's musings about military crimes, correct? I would believe that's correct, yes. Okay. Our argument is that these are elements of the statutory offense. As a practical matter, in the military courts, there's no way to charge just under the statute. The specifications lay out the actual language that the prosecutor has to use. So it's actually a legal fiction to say that there is this offense. When you say it's a legal fiction, there are at least three cases, right, that have been cited where the military court has said those things in the manual, they are not part of the statute, they are not statutory elements. I mean, I can read them to you, but you know what I'm talking about, right? Right. Okay. So if the Army itself looks at it and says they're not part of the statute, this is the statute, these are the elements in the statute, we should be paying attention to them, shouldn't we? Well, I can't argue that those elements are in the statute. They certainly are not in the statutory language. But courts have, for example, relied on state court interpretations of their law in order to find the boundaries of the offense. Here, I think it's proper for the court to rely on the manual to see what the elements are. I mean, this is not a... You just put the rabbit right back in the hat when you say to see what the elements are. The court of military justice has been as plain as day in saying, those are not elements of the offense. The elements of the offense are in Article 120, just that clear. So if that's what they're telling us, why would we listen to the BIA who says, yeah, and this other thing is an element too? As a practical matter, I think that is the only argument, that there actually is no charging of a simple offense under 10 U.S.C. 925. That never happens. So you're making the only argument you've got. That's what I'm doing. That's your story and you're sticking to it. Okay, if my colleagues will indulge me, I want to ask you what I asked Mr. Shagan too. Let's say we send this back, all right? And do we try to give some guidance about, I guess, on what's a CIMT? That is something that the board is supposed to look at and that we're supposed to give some deference to, right? Right. Do you have any insight into how they judge whether something is a CIMT? Is it something to be judged in light of the crime at the time of conviction or is it something to be judged as of a much, much, much later date, more than a decade later? It's an interesting question. It's not properly before the court here because it needs to be remanded to the board. I don't have an answer. I don't have a solid answer to that question. It's obviously a very touchy area of the law to go back and to look at the statute before it was amended post-Lawrence, but that's something that the board would have to address, and I don't have the answer to that. Okay. If the court doesn't have further questions. Judge Van Antwerpen, do you have questions? I do not, sir. Thank you. Thank you very much. Thank you. You have rebuttal if you want it. I'm just going to say a few very brief things. There is a cure to the entire thing that ails us in this case, and that is Congress could consider military crimes and military status when it deals with its immigration laws. For some reason, it really has never addressed it head on, and we've sort of come into this conflict backwards without anybody fully addressing it. And I think they're the party that should address it because, as I pointed out in my brief, there's a number of places where there's just a cognitive dissonance between the law of the military and the law of immigration. And then the last thing I would say is I think you understand the case, and I thank you very much for the attention you've given it. Thank you. Thank both the counsel for helpful arguments, for candor in what is a very unusual case. We'll take it under advisement. At this point, I would ask the clerk if we could please clear the courtroom so that the panel may conduct its conference via telephone.